UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

OSCAR RIVERA,

          Plaintiff,          Case No. 1:25-cv-361

v.                                   Honorable Phillip J. Green

UNKNOWN VANDERWIEL, et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Vanderwiel. The Court will also dismiss, for failure to state a

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

claim, the following claims against the remaining Defendants: Plaintiff's claims for violating 42 U.S.C. § 1985, and Plaintiff's claims for First Amendment retaliation against Defendant Singerling relating to the drafting of the "false" misconduct report on December 8, 2022. Plaintiff's First Amendment retaliation claims against Defendants Singerling and Greiner relating to their respective roles in removing Plaintiff from the Advanced Substance Abuse Therapy Phase II group remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. The events about which he complains occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues the following MCF personnel: Corrections Officer Unknown Vanderwiel; Sergeant Unknown Singerling; and Staff Program Provider Unknown Greiner.[2]

Plaintiff alleges that, during December of 2022, an unknown inmate made a Prison Rape Elimination Act complaint against Defendant Vanderwiel. (Compl., ECF No. 1, PageID.3.) On December 8, 2022, Defendant Vanderwiel asked Plaintiff if he had assisted in the filing of that complaint. Plaintiff responded "no," but he added

---

[2] Plaintiff provides two spellings for Defendant Greiner's surname: Greiner and Griener. The Court has opted to use the spelling Plaintiff used in the caption, Greiner.

4

that he believed the complaint. (*Id.*) Defendant Vanderwiel told Plaintiff, "Oh yeah, it's time to get rid of you." (*Id.*)

Later that day, Defendant Vanderwiel placed a towel over Plaintiff's cell window, thereby blocking any view inside the cell, and directed Plaintiff to leave the area. (*Id.*) Plaintiff objected because the covering of the window violated policy. (*Id.*) Defendant Vanderwiel indicated that he did not care. (*Id.*)

Plaintiff then complained to Defendant Singerling about Vanderwiel's policy-violating action. (*Id.*, PageID.3–4.) Defendant Singerling advised Plaintiff to stop causing trouble or Singerling would have Vanderwiel put Plaintiff in segregation. (*Id.*, PageID.4.) Plaintiff countered that he was not causing any trouble. (*Id.*) Defendant Singerling then asked: "Didn't you have something to do with that PREA on Vanderwiel?" (*Id.*) Defendant Singerling noted that he would be "pissed too." (*Id.*)

Defendant Singerling then contacted Defendant Vanderwiel by radio. (*Id.*) Defendant Singerling advised Vanderwiel that Singerling had Plaintiff in the office and that Plaintiff advised Singerling that Vanderwiel was violating MDOC policy by covering Plaintiff's cell window. (*Id.*) Defendant Singerling instructed Defendant Vanderwiel to "[f]ind something in that cell and write it up for November 9, 2022, then date it December 9, 2022."[3] (*Id.*) Defendant Vanderwiel agreed to do so. (*Id.*)

---

[3] Plaintiff does not make clear the significance of the November/December timing issue. Based on the remaining allegations in Plaintiff's complaint, the Court cannot conceive of a reason for Defendant Singerling's instruction regarding the relevant dates.

5

Plaintiff notes that he filed a grievance regarding this matter, but he does not identify the date he filed the grievance. (*Id.*)

That day, Defendant Vanderwiel issued Plaintiff a fabricated Class I misconduct report for "dangerous contraband" as well as a contraband removal slip "dated for November 9, 2022." (*Id.*) The contraband purportedly found was a tattoo device. (*Id.*) Plaintiff claims that Defendants Singerling and Vanderwiel fabricated the misconduct charge as part of a conspiracy to retaliate against Plaintiff for Plaintiff's participation in protected conduct. (*Id.*)

On December 11, 2022, Defendant Greiner, the staff provider for Plaintiff's Advanced Substance Abuse Therapy Phase II group (Phase II), asked Plaintiff if he possessed dangerous contraband. (*Id.*, PageID.5.) Plaintiff replied that he did not, that the ticket was falsified, and that he intended to fight it. (*Id.*) Defendant Greiner then stated that fighting the ticket would not be a very smart idea. (*Id.*)

On December 20, 2022, Plaintiff was summoned to Defendant Greiner's office. (*Id.*) Defendant Greiner asked Plaintiff what he had learned in class. (*Id.*) Defendant Greiner interrupted Plaintiff's response by asking Plaintiff if he had filed a grievance against Defendant Vanderwiel. (*Id.*) Plaintiff acknowledged that he had done so. (*Id.*) Defendant Greiner advised Plaintiff that he should drop the grievance because, if he did not, Defendant Greiner would conclude that Plaintiff had learned nothing from Phase II. (*Id.*) Plaintiff declined to do so. (*Id.*) Defendant Greiner then informed Plaintiff that he would be removed from the group. (*Id.*) When Plaintiff asked how Defendant Griener had become aware of the issue, Greiner replied that

6

"Singerling asked [Greiner] to help [Plaintiff] understand the impacts of [Plaintiff's] bullshit complaints." (*Id.*)

Plaintiff was later terminated from Phase II by Defendant Greiner. (*Id.*) Plaintiff contends the termination was a result of the conspiracy between Defendants Greiner, Singerling, and Vanderwiel to retaliate against Plaintiff because of Plaintiff's protected conduct. (*Id.*, PageID.5–6.) Plaintiff filed a grievance regarding the conspiracy to retaliate. (*Id.*, PageID.6.)

On December 28, 2022, a hearing officer conducted a hearing on the Class I misconduct report for possession of dangerous contraband. (*Id.*) Plaintiff was found guilty of possessing the tattoo device. (*Id.*)

Plaintiff claims that Defendants Vanderwiel and Singerling violated 42 U.S.C. § 1985 and the First Amendment by conspiring to retaliate against Plaintiff because Plaintiff lodged verbal complaints against Defendant Vanderwiel. (*Id.*) Plaintiff also claims that Defendant Vanderwiel violated the First Amendment by fabricating a Class I misconduct violation against Plaintiff because Plaintiff lodged verbal complaints against Defendant Vanderwiel. (*Id.*, PageID.6–7.) Plaintiff claims that all three Defendants conspired to retaliate against Plaintiff because Plaintiff lodged verbal complaints and filed written grievances against Defendants Vanderwiel and Singerling. (*Id.*) Finally, Plaintiff claims that Defendant Greiner violated the First Amendment by fabricating a reason to terminate Plaintiff from Phase II in retaliation for Plaintiff's verbal and written complaints against Defendants Vanderwiel and Singerling. (*Id.*)

7

Plaintiff seeks $450,000.00 in nominal and punitive damages against each Defendant. (*Id.*, PageID.7.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff invokes the protections of 42 U.S.C. § 1985 and the First Amendment. (Compl., ECF No. 1, PageID.6–7; Brief, ECF No. 1, PageID.15.) It is possible that Plaintiff's factual allegations might implicate other constitutional protections; but Plaintiff very specifically raises on § 1985 conspiracy claims and First Amendment claims. Because Plaintiff is proceeding pro se, the Court is bound to construe his complaint liberally. *Haines*, 404 U.S. at 520. However, this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). To require otherwise "would not only strain judicial resources . . . but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

A.     **Section 1985 Conspiracy**

Plaintiff alleges that Defendants Vanderwiel and Singerling, and Defendants Singerling, Greiner, and Vanderwiel, conspired to violate Plaintiff's constitutional rights in violation of 42 U.S.C. § 1985. (*See* Compl., ECF No. 1, PageID.6–7.) To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[4] a plaintiff must show the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff fails to allege sufficient facts to suggest that Defendants' alleged actions were motivated by Plaintiff's membership in a distinct class or undertaken to deprive Plaintiff of equal protection

---

[4] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

of the laws. Therefore, Plaintiff's § 1985 claims will be dismissed for failure to state a claim on which relief may be granted.

### B. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Protected Conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding

11

that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Thus, Plaintiff's oral complaint to Defendant Singerling about Defendant Vanderwiel is protected conduct. Similarly, Plaintiff's filing of written grievances against Defendants is also protected conduct.

However, considering the facts as alleged, even if Plaintiff had assisted another inmate in filing a PREA complaint, his assistance would not be protected conduct. A prisoner does not have an independent right to help others with their legal claims and grievances, unless the inmate receiving the assistance would otherwise be unable to seek redress. *Herron v. Harrison*, 203 F.3d 410, 415-16 (6th Cir. 2000) (citing *Thaddeus-X*, 175 F.3d at 395) (holding that while a prisoner does not have an independent right to help others with their legal claims and grievances, such conduct is protected when the inmate receiving the assistance would otherwise be unable to seek redress). Here, Plaintiff's complaint contains no facts to indicate that Plaintiff's assistance would have been necessary to allow the other inmate to seek redress for his PREA claims.

### 2. Adverse Action

Plaintiff contends that the prospect of punishment for a Class I misconduct report and being removed from Phase II constitute adverse actions. To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action

12

by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff alleges that Defendants Singerling and Vanderwiel acted adversely toward Plaintiff when Defendant Singerling advised Defendant Vanderwiel to find something in Plaintiff's cell to support a misconduct ticket and when Defendant Vanderwiel obliged. The threat of sanctions that follow a misconduct determination is sufficiently adverse to deter a person grom exercising constitutional rights. Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben*, 887 F.3d at 266–67 (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010)) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Therefore, Plaintiff has alleged sufficient facts to show that the actions of Defendants Singerling and Vanderwiel, because of their respective roles in issuing the Class I misconduct report, would rise to the level of an adverse action.

Plaintiff alleges that all three Defendants acted to have him removed from Phase II, a program which Plaintiff notes is important to his parole prospects. The Court agrees that removal from such a program rises to the level of adverse action. *See, e.g., Bradley v. Yokom*, No. 1:21-cv-741, 2024 WL 2745198, at *4 (W.D. Mich. May 29, 2024) (noting that removal of a prisoner from prison educational program was adverse action); *Opoku-Agyemang v. Montgomery*, No. 18-13125, 2022 WL 4125260, at *5 (E.D. Mich. Apr. 21, 2022), *R&R adopted* 2022 WL 4122039, (concluding that removal from a Residential Substance Abuse Treatment program was adverse action). However, while Plaintiff alleges sufficient facts regarding Defendant Greiner's role removing Plaintiff from the program, as well as Defendant Singerling's role in prompting Defendant Greiner to act, Plaintiff alleges no facts to suggest that Defendant Vanderwiel played any role in removing Plaintiff from Phase II. Accordingly, while Plaintiff has satisfied the element of adverse action with respect to Defendants Greiner and Singerling, the Court concludes that Plaintiff has failed to connect Defendant Vanderwiel to this adverse action.

3. **Causation**

With respect to the third and final element of causation, Plaintiff has alleged "direct evidence" to support an inference that Defendants Greiner and Singerling took their adverse actions because of retaliatory motives. Plaintiff alleges that Defendants Singerling and Greiner acted to remove Plaintiff from Phase II to help him "understand the impacts of [Plaintiff's] bullshit complaints." (Compl., ECF No. 1, PageID.5.) The statement plainly evidences an intention to make Plaintiff think twice before he files another grievance.

14

There are also clear statements of intent with regard to the "false" misconduct charge written by Defendant Vanderwiel at Defendant Singerling's instruction. Defendant Vanderwiel indicated that he was angry with Plaintiff for assisting another inmate in filing a PREA grievance against Defendant Vanderwiel. (Compl., ECF No. 1, PageID.3.)  Defendant Singerling expressed the same motivation, saying "Didn't you have something to do with that PREA on Vanderwiel? I'd be pissed too." (*Id.*, PageID.4.)  Taking Defendants' statements as true however, Defendants were retaliating against Plaintiff for ***unprotected*** conduct, i.e., assisting another prisoner in filing a grievance.  Retaliation for providing such assistance, although hardly admirable, is not a First Amendment violation.

Plaintiff ignores these clear statements when he attempts to link his protected activity to the adverse action.  At best, the two are linked by temporal proximity. Certainly, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to

15

> retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010). Plaintiff's reliance on temporal proximity in this instance, when it is contradicted by direct evidence of a different motive, is unavailing. Accordingly, the Court concludes that Plaintiff has failed to state a First Amendment retaliation claim against Defendants Singerling and Vanderwiel with regard to the adverse action of preparing a "false" misconduct report on December 8, 2022.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant Vanderwiel will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's claims for violating 42 U.S.C. § 1985 against Defendants Singerling and Greiner; and Plaintiff's claims for First Amendment retaliation against Defendant Singerling relating to the drafting of the "false" misconduct report on December 8, 2022. Plaintiff's First Amendment retaliation claims against Defendants Singerling and Greiner relating to their respective roles in the removal of Plaintiff from the Advanced Substance Abuse Therapy Phase II group remain in the case.

An order consistent with this opinion will be entered.

16

Dated: May 8, 2025                               /s/ Phillip J. Green
                                                                         PHILLIP J. GREEN
                                                                         United States Magistrate Judge